IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* MIGUEL BRITO,<br><br>     Petitioner,<br><br>  v.<br><br>MIKE ATCHISON, Warden, MENARD CORRECTIONAL CENTER,<br><br>     Respondent. | Case No. 11 C 6792<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Miguel Brito's Petition for a Writ of *Habeas Corpus*. For the reasons stated herein, the Court denies the Petition.

### I. BACKGROUND

On December 2, 2004, Petitioner Miguel Brito (hereinafter, the "Petitioner") was charged with first degree murder for allegedly shooting and killing Jesus Campos on October 3, 2004. After a bench trial, on July 25, 2006, Petitioner was acquitted of the first degree murder charge, but was convicted of aggravated discharge of a firearm and armed violence pursuant to 720 ILCS 5/24—1.2(a)(2) and 720 ILCS 533A-2(c). On November 21, 2006, Petitioner was sentenced as a Class X offender to 38 years' imprisonment.

Petitioner directly appealed his conviction to the Illinois Appellate Court. While Petitioner's appeal was pending, the Illinois legislature enacted Public Act 95-688, which excluded as a predicate offense to armed violence "any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range." Pub. Act 95—688, §4, eff. October 23, 2007.

While Petitioner's direct appeal was pending, he filed a Petition to Vacate his conviction and sentence in light of Public Act 95-688 pursuant to 735 ILCS 5/2-1401. The trial court denied this petition, and Petitioner appealed. The Illinois Appellate Court consolidated Petitioner's direct appeal with his 735 ILCS 5/2-1401 appeal.

On August 7, 2008, the Appellate Court affirmed Petitioner's conviction and affirmed the trial court's denial of his 5/2-1401 petition. At this time, Petitioner sought leave to appeal to the Illinois Supreme Court. The Supreme Court denied the petition.

Petitioner then filed for post-conviction relief under 725 ILCS 5/122-1, *et seq.* In his post-conviction petition, he alleged several constitutional violations based on the fact that Public Act 95-688 should apply retroactively. The trial court rejected Petitioner's arguments and dismissed the petition. Petitioner appealed. On appeal, the Illinois Appellate Court affirmed the

trial court's dismissal, reasoning that Section 4 of Illinois' Statute on Statutes justified its ruling. The Appellate Court noted that Petitioner's "criminal act and his conviction preceded the substantive amendment to the armed violence statute," and there was no language in Public Act 95-688 that suggested the legislature intended a retroactive application. *See* Resp't Answer at 5, citing Ex. B at 3-5. Petitioner then sought leave to appeal this ruling to the Illinois Supreme Court, which was denied.

On September 27, 2011, Petitioner filed the instant *habeas* petition with this Court under 28 U.S.C. § 2254. In it, Petitioner alleges his conviction is unconstitutional because (1) his due process rights were violated when the trial court applied aggravated discharge of a firearm as a predicate offense for Petitioner's armed violence conviction; (2) his conviction was not final before Public Act 95-688 became effective; and (3) his due process and equal protection rights were violated because the courts failed to apply Public Act 95-688 retroactively.

## II. **LEGAL STANDARD**

28 U.S.C. § 2254 limits the ability of district courts to grant *habeas* relief to state prisoners. Relief will not be granted under Section 2254 unless the Court determines that the state court's adjudication of a claim resulted in either (1) a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States

Supreme Court[;]" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2). The federal courts review the decisions of the state courts on a deferential standard of review. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). The factual findings of the state court are presumed correct unless the petitioner rebuts this presumption with "clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).

A federal court may not grant a Petitioner's *habeas* petition if the court finds that the state court applied state law incorrectly or inappropriately. *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). Instead, a federal court can issue a writ under Section 2254 only if it determines that the state court's application of federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). The burden is on the petitioner to show that the state court's determination of fact or its application of federal law was unreasonable. *Sturgeon v. Chandler*, 552 F.3d 604, 609 (7th Cir. 2009). This is a difficult standard particularly because the courts define unreasonable as "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003).

Additionally, pursuant to Section 2254, state prisoners cannot present a claim in federal court until they exhaust their state court remedies and subject their claims to a complete round of state appeals. *See Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). If a prisoner exhausts his remedies without subjecting each claim to a complete round of appeals, he has procedurally defaulted that claim. *Id.* When determining whether a petitioner has fairly presented a claim to the state courts, the federal court examines whether the prisoner provided both the relevant facts and law. *Id.*

### III. <u>DISCUSSION</u>

At the outset, the Court notes that in the petition, Petitioner purports to raise three distinct claims for *habeas* review. However, the Court finds each of the three claims substantially similar. In all three, Petitioner argues that the state court should have applied Public Act 95-688 retroactively. Nevertheless, the Court will address each claim in turn.

#### A. Claim 1

In his first claim, Petitioner argues that his due process rights were violated because his "conviction is an improper compromised judgment." Petr.'s Pet. for Writ of Habeas Corpus at 5(A); [Dkt. 1, PageID # 13]. Petitioner argues that because the state court acquitted him of first degree murder charges, the court arbitrarily substituted an offense with prison time similar to that of first-degree murder to convict him. Petitioner also contends

that the version of the statute which he was convicted under was "ambiguous" with respect to what predicate offenses could be used for armed violence convictions. Because of this, he proposes that the Court should apply the doctrine of lenity and vacate his armed violence conviction. *See id.*

The Supreme Court has "repeatedly emphasized that the 'touchstone' of the rule of lenity 'is statutory ambiguity.'" *Moskal v. United States*, 498 U.S. 103, 107-08 (1990) citing *Bifulco v. United States*, 447 U.S. 381, 387 (1980). However, when determining whether a statute is ambiguous, the courts refuse to apply the rule of lenity merely because it is "possible to articulate a construction more narrow than that urged by the Government." *Id.* citing *McElroy v. United States*, 455 U.S. 642, 657-58 (1982). Instead, the Supreme Court instructs that the rule of lenity should apply only "in situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to "the language and structure, legislative history and motivating policies of the statute." *Id.* citing *Bifulco*, 447 U.S. at 387.

When interpreting a statute, the courts first examine the plain language giving the words their ordinary meaning. *United States v. Turkette*, 452 U.S. 576, 580 (1981). "Absent a clearly expressed legislative intention to the contrary, the language must be ordinarily regarded as conclusive." *United States ex rel.*

*Bocian v. Godinez*, No. 94-C-6147, 1995 U.S. Dist. LEXIS 13225 at *10-11 (N.D. Ill. Sept. 12, 1995).

In Illinois, a person commits aggravated discharge of a firearm if "he or she knowingly or intentionally . . . (2) [d]ischarges a firearm in the direction of another person . . ." 720 ILCS 5/24-1.2. At trial, the court found Petitioner guilty of this offense and used this charge as a predicate offense for Petitioner's armed violence charge.

"A person commits armed violence when he or she personally discharges a firearm that is a Category I or Category II weapon that proximately caused . . . death to another person while committing any felony defined by Illinois law . . ." 720 ILCS 5/33A—1(b)(2). A category I weapon is a handgun. *Id.* The .22 caliber revolver Petitioner used qualified as a category I weapon. *See People v. Ptak*, 550 N.E.2d 711 (Ill. 1990) (any weapon specifically listed in the definition is considered to be a *per se* dangerous weapon).

Petitioner argues the words "any felony defined by Illinois law" in the armed violence statute are ambiguous. He contends that support for this argument lies in the Illinois legislature's decision to amend the armed violence statute in 2007 with Public Act 95-688.

After reviewing the plain language of the armed violence statute, as it existed at the time Petitioner was convicted, the

Court does not agree. In this case, because when Petitioner committed his offense, aggravated discharge of a firearm was a felony in Illinois not excluded by the statute, Petitioner was convicted for armed violence. *See People v. Hauschild*, 871 N.E.2d 1, 20 (Ill. 2007) *overruled on other grounds* (rejecting a defendant's due process lack of notice argument because "the statutes at issue remained intact" when defendant committed his crime, he was "on notice that his conduct might fall within their scope.").

In *People v. Hauschild*, a defendant argued, (among other things) that his armed robbery sentence was void in light of the law that existed at the time of sentencing. *Hauschild*, 871 N.E.2d at 6. Among other things, the defendant argued that since Public Act 91-404 excluded armed robbery as a predicate offense for armed violence, his armed robbery conviction and sentence were unconstitutional. The Illinois Supreme Court did not agree. It noted "[a]lthough it is true that Public Act 91-404 expressly excluded armed robbery as a predicate offense for armed violence, the offense of robbery was not excluded," and thus "because the armed violence statute *unambiguously* allows robbery to serve as a predicate offense and those robberies are inherently committed while armed, we must enforce the statute as enacted and may not depart from the language by creating exceptions, limitations, or

conditions not expressed by the legislature." *Id.* at 29 citing *People v. Woodard*, 677 N.E.2d 935 (Ill. 1997)(emphasis added).

Similarly, in this case, at the time that Petitioner was convicted, the armed violence statute unambiguously included aggravated discharge of a firearm as a predicate offense. Moreover, Petitioner fails to expand upon how the armed violence statute was ambiguous at the time he was convicted. Accordingly, the Court does not find the statute ambiguous and does not find the rule of lenity applicable. *See People v. Clemons*, 968 N.E.2d 1046, 1052 (Ill. 2012) (holding that "*Hauschild* remains the law as to the meaning of the armed violence statute prior to its amendment by Public Act 95-688."); *see also People v. McBride*, 972 N.E.2d 1173, 1182 n.4 (Ill. App. Ct. 2012) (finding that since Public Act 95-688 "took effect after defendant in this case was indicted, it would have no impact on the outcome of the case.").

Also in his first claim, Petitioner asserts that aggravated discharge of a firearm is not "a proper predicate for armed violence" because (1) there is no independent felonious purpose in the predicate from the killing"; and (2) the State did not have to prove intent to kill. Petr.'s Habeas Pet. at 5(B) [Dkt. 1, Page ID# 14].

At the outset, the Court notes that these arguments do not appear to constitute Constitutional challenges to Petitioner's conviction, as is required for a Section 2254 petition. *See*

*Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Notwithstanding this, the Court will briefly address the merits of such arguments and assume that they relate to Petitioner's due process claim.

First, Petitioner argues that aggravated discharge of a firearm is not an appropriate predicate offense because it does not have an independent felonious purpose. However, Petitioner appears to confuse his armed violence conviction with a conviction for felony murder. (Because Petitioner failed to include any authority or case citations to support his arguments, the Court is limited in its analysis. The Court reminds Petitioner that it is not even obligated to address such arguments in light of the well-established rule that "arguments which are unsupported by relevant authority are deemed waived." *Smith v. Rush-Presbyterian-St. Luke's Medical Center*, 71 Fed.Appx. 589, 590 (7th Cir. 2003)). Nonetheless, the Court will attempt to address the remaining allegations in Claim 1.

In *People v. Davis*, a defendant argued that his felony murder conviction should be vacated because his predicate offense (mob action) was not independent of the killing that resulted in his felony murder conviction. *People v. Davis*, 821 N.E.2d 1154, 1160-62 (Ill. 2004). In rejecting the defendant's arguments, the Illinois Supreme Court noted that since the same evidence was not used to prove both the predicate offense and the murder, the Court could "conclude that the predicate felony underlying the charge of

felony murder involved conduct with a felonious purpose other than the conduct that killed Richard [the victim]." *Id.* at 1163.

Here, Petitioner was not convicted of felony murder. Indeed, Petitioner was acquitted of all murder charges against him. Thus, Petitioner's concern with respect to the State being relieved from proving the requisite state of mind is irrelevant. As previously noted, in order to sustain an armed violence conviction pursuant to 720 ILCS 5/33-A-2(c), the State must prove that the person committed "any felony defined by Illinois law" that "proximately caused the death of another person." 720 ILCS 5/33A-2(c). At trial, the judge determined that the State proved beyond a reasonable doubt that Petitioner intentionally and knowingly discharged his gun in the direction of another person, and that one of the bullets discharged from Petitioner's gun proximately caused the death of Jesus Campos. Petitioner challenged this finding on his direct appeal. However, after the appellate court reviewed Petitioner's post-arrest statements and the physical evidence adduced at trial, the appellate court affirmed Petitioner's conviction.

After reviewing the record and taking into account the deferential standard of review this Court must adhere to with respect to the fact findings of the lower courts, this Court agrees with the state courts' determination. *See Gardner v. Barnett*, 175 F.3d 580, 582 (7th Cir. 1999). The Court also notes that

Petitioner failed to supply this Court clear and convincing evidence to support his arguments that the lower courts findings were "contrary to or involved an unreasonable application of clearly established Federal law . . ." thereby failing to satisfy his burden under Section 2254. 28 U.S.C. § 2254(d)(1); *see also United States ex rel. Blankenship v. Circuit Court of Cook Cnty.*, 59 F.Supp.2d 736, 742 (N.D. Ill. 1999) (stating that if the petitioner had "a full and fair hearing . . . resulting in reliable findings, the federal court ordinarily should accept the facts as found by the state tribunal."). As such, the Court does not find that Petitioner's first claim entitles him to relief under Section 2254.

## B. Claim 2

In his second claim, Petitioner argues that Public Act 95-688 should have applied to his conviction because his conviction was not final when Public Act 96-688 became effective. Because of this, Petitioner claims his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments were violated.

The Court disagrees. When determining whether a statute applies retroactively the courts follow the guidelines the Supreme Court set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Siddiqui v. Holder*, 670 F.3d 736 (7th Cir. 2012). In *Landgraf*, the Supreme Court instructed courts to first determine whether Congress indicated with "requisite clarity" whether

retroactive application is appropriate. *Id.* If this intent is clear, then the court "must give effect to the unambiguously expressed will of Congress." *Flores-Leon v. INS*, 272 F.3d 433, 438 (7th Cir. 2001). However, if the statute is silent as to whether it is retroactive, the courts should consider if applying the statute retroactively "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. In other words, there is a presumption against retroactivity when congressional intent is ambiguous. *Siddiqui*, 670 F.3d at 747.

The Illinois courts follow the same approach the Supreme Court set forth in *Landgraf*. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 537 (7th Cir. 2007) (stating that in Illinois the courts begin their analysis with the default presumption that a statute acts prospectively only). Additionally, the Illinois Supreme Court has held that an Illinois court "need never go beyond step one of the *Landgraf* test." *Id.* citing *People v. Atkins*, 838 N.E.2d 943, 947 (Ill. 2005). This is because Section 4 of the Illinois' Statute on Statutes provides guidance for the courts to determine legislative intent if Congress has not spoken. *Id.* According to Section 4, substantive changes to statutes may not be applied retroactively. *Id.* citing *Atkins*, 838 N.E.2d at 947.

As support for his claim that Public Act 95-688 should apply retroactively to his conviction, Petitioner argues that his conviction was not "final" until after the appellate court affirmed the trial court's determination. Here again, Petitioner fails to offer any support for his argument. As a result, the Court cannot find a retroactive application of Public Act 95-688 appropriate. Instead, the Court finds the plain language of the Act as well as Section 4 of Illinois' Statute on Statutes and the relevant Illinois case law persuasive. *See, e.g.*, *McBride*, 972 N.E.2d at 1182 n.4 (stating that since Public Act 95-688 took effect after defendant was indicted, it would have no impact upon the outcome of this case). Accordingly, the Court refuses to grant Petitioner relief based on his second claim.

### C. Claim 3

Finally, Petitioner argues that Public Act 95-688 is a clarification of the old statute and the legislature intended that it should apply retroactively. As support for this claim, Petitioner makes similar arguments to his previous two claims and also asserts "actual innocence as a matter of law, but not to any crime at all; [*sic*] but, specifically to the armed violence conviction predicated on aggravated discharge of a firearm for armed violence, while his appeal was pending." Petr.'s Pet. for Writ of Habeas Corpus at 6B; [Dkt. 1, PageID# 20]. However, actual innocence is not a cognizable claim under § 2254 habeas review.

*See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Conner v. McBride*, 375 F.3d 643 (7th Cir. 2004). As such, the Court will not consider this argument.

Petitioner also asserts that Public Act 95-688 should be applied retroactively because the Supreme Court precedent indicates that "new rule[s] for the conduct of all criminal prosecution[s] [] [are] to be applied in all cases, state or federal, pending direct review and not yet final, with no exceptions, for cases in which the new rule constitutes a clear break with the past." Petr.'s Pet. for Writ of Habeas Corpus at 6D, [Dkt. 1, PageID# 22]. While here again Petitioner fails to provide the Court any case citations, the Court presumes that Petitioner is attempting to use *Griffith v. Kentucky* or its progeny as support for the fact that Public Act 95-688 should be applied retroactively. *See generally Griffith v. Kentucky*, 479 U.S. 314 (1987). However, *Griffith* addressed the issue of whether the Supreme Court's decision in *Batson* was to be retroactively applied to cases on direct review. Id. at 316. In determining it was, and overruling the "clear break" exception, the Supreme Court noted:

> [F]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication. First, it is a settled principle that this Court adjudicates only "cases" and "controversies." *See* U.S. Const., Art. III, § 2. Unlike a legislature, we do not promulgate new rules of constitutional criminal procedure on a broad basis. Rather, the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But

> after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.

*Id.* at 322-23 (1987).

Thus, the Court in *Griffith* distinguished new declared rules of the Court from newly enacted laws or amendments from the legislature. Public Act 98-355 is indisputably a legislative amendment, and not a "newly declared constitutional rule" from the Supreme Court. *Id.* Moreover, Public Act 95-688 does not involve a procedural amendment governing the conduct of criminal prosecutions, as the rule in *Batson* did. Instead, Public Act 95-688 involves a substantive change in the law. *See Atkins*, 838 N.E.2d at 947 (stating "[s]ubstantive amendments include those that alter the scope or elements of a crime."). Thus, the Court does not find retroactive application appropriate.

The Court similarly finds Petitioner's reliance on *Teague v. Lane* misplaced. *Teague v. Lane*, 489 U.S. 288. In *Teague*, the Supreme Court addressed the issue of whether a decision announcing a new constitutional rule should be given retroactive effect in habeas proceedings. *Teague*, 489 U.S. 288 (1989). In holding that generally such rules should not be applied retroactively, the Supreme Court provided two exceptions to the general rule. *Id.* at 311. First, the Court noted that a new rule "should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making

authority to proscribe." *Id.* citing *Mackey v. United States*, 401 U.S. 667, 692 (1971). Next, the Court stated that a new rule should be applied retroactively if the rule requires the court to observe procedures implicit in the "concept of ordered liberty." *Id.* at 314. In rejecting the petitioner's argument that the rule in *Teague* should apply retroactively the Court noted "[w]ere we to recognize the new rule urged by petitioner in this case, we would have to give petitioner the benefit of that new rule even though it would not be applied retroactively to others similarly situated." *Id.* at 314.

In light of the fact that Public Act 95-688 is a legislative amendment, and not a judicial decision announcing a new constitutional rule, the Court here finds *Teague* inapplicable to Petitioner's case. Thus, the Court rejects Petitioner's arguments in his third and final claim.

### IV. **CERTIFICATE OF APPEALABILITY**

In order to obtain a certificate of appealability, Petitioner must make a "substantial showing of the denial of [a] constitutional right." 28 U.S.C. § 2253(c). He has made such a "substantial showing" if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011)(citation omitted).

This Court concludes that Petitioner failed to make a substantial showing that his constitutional rights were denied. Accordingly, the Court denies Petitioner a Certificate of Appealability.

## V. CONCLUSION

For the reasons stated herein, this Court declines to issue Petitioner a Writ of *Habeas Corpus*. The Court also denies a Certificate of Appealability.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　United States District Court

**DATE:** 1/10/2013